# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| UNITED STATES OF AMERICA, | : | Case No. 1:16-cr-98 |
|---|---|---|
| vs. | : | Judge Timothy S. Black |
| ISMAIL SALAAM, | : | |
| Defendant. | : | |

## ORDER DENYING
## DEFENDANT'S RULE 29 MOTION

This criminal case is before the Court on Defendant's oral motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29 and the parties' oral arguments, as made on the record on November 9, 2018. (Min. Entry, Nov. 9, 2018).

## I. BACKGROUND

On October 11, 2016, a federal grand jury returned a two-count indictment, charging Defendant Ismail Salaam with: sex trafficking of children, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2) (Count 1); and production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Count 2). (Doc. 16). On January 24, 2017, the Government obtained a superseding indictment, adding one additional count of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Count 3). (Doc. 32).

The case proceeded to a jury trial beginning on November 5, 2018. The Government rested on November 9, 2018, at which time Defendant orally moved for a judgment of acquittal, pursuant to Fed. R. Crim. P. 29. (Min. Entry, Nov. 9, 2018). The

Court heard oral arguments at that time and, pursuant to Fed. R. Crim. P. 29(b), the Court reserved decision on Defendant's motion. (Min. Entry, Nov. 9, 2018). Defendant renewed his motion later that afternoon, at the close of all evidence. (*Id.*)

Jurors commenced deliberations on November 13, 2018. (Min. Entry, Nov. 13, 2018). And on November 14, 2021, the jury found Defendant guilty on all three counts. (Min. Entry, Nov. 14, 2018); (Doc. 101). At the conclusion of trial, the Court orally denied Defendant's Rule 29 motion, and the Court hereby memorializes its ruling by way of this written Order. (Min. Entry, Nov. 14, 2018).

## II. STANDARD OF REVIEW

Fed. R. Crim. P. 29(a) states, in pertinent part:

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.

The test for determining sufficiency of the evidence is "whether, 'viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could [find] the essential elements of the crime beyond a reasonable doubt.'" *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).

"In addressing a Rule 29 motion, the Court may not make credibility determinations, and may not weigh the evidence." *United States v. Gen. Elec. Co.*, 869 F. Supp. 1285, 1290 (S.D. Ohio 1994) (citing *United States v. Davis*, 981 F.2d 906, 908

(6th Cir.1992)). Further, "the Court must resolve any conflicts in the testimony in favor of the prosecution." *Id*. (citing *United States v. Tilton*, 714 F.2d 642, 645 (6th Cir.1983)).

Finally, if the Court reserves decision on a Rule 29 motion made prior to the jury returning its verdict, the Court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

### III. ANALYSIS

Defendant moved for a judgment of acquittal on all three counts of the Superseding Indictment, arguing that the Government's evidence at trial was insufficient to prove the elements as to any offense. The Court will address Defendant's arguments as to each offense in turn.

#### A. Count 1 – Sex Trafficking of a Minor

Count 1 of the Superseding Indictment charged Defendant with sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2). (Doc. 32). To convict Defendant on Count 1, the Government was required to prove: (1) that on or about September 15, 2016, Defendant knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited a minor ("J.B."); (2) that Defendant knew or recklessly disregarded the fact that J.B. was under the age of 18 years old and would be caused to engage in a commercial sex act; and (3) that the offense was in or affected interstate commerce. 18 U.S.C. § 1591(a); Sixth Cir. Pattern Inst. 16.12.

During oral arguments, Defendant argued that the Government presented evidence of certain text messages during its case in chief, but had failed to prove that Defendant was the individual who sent said messages. Defendant further argued that the

Government failed to prove that Defendant knew (or recklessly disregarded the fact that) there was a risk J.B. would be caused to engage in a commercial sex act. Finally, Defendant argued that there is no "interstate nexus" because all of the acts took place in Ohio. The Court disagrees with each of Defendant's arguments.

The Government presented evidence at trial showing that J.B. was a 16-year old runaway, that she was staying with Defendant for the weeks leading up to the arrest, and that Defendant and J.B. stayed together at the La Quinta in Springdale, Ohio on September 13, 14, and 15, 2016. The Government also presented evidence, including Defendant's own admissions, that Defendant was aware J.B. was only 16 years old. Further, J.B. testified that, while staying with Defendant at the La Quinta, Defendant was insistent on having J.B. engage in prostitution, and that Defendant accordingly worked to advertise and coordinate those efforts.

Moreover, sexually explicit pictures and videos of J.B., all taken while J.B. was staying with Defendant, were found on J.B.'s iPhone and a black Huawei smart phone. J.B. testified that the Huawei, along with a Samsung flip phone, belonged to Defendant. Indeed, the number associated with the flip phone was saved in J.B.'s iPhone contacts under the name "Ish Bae," which J.B. testified was her nickname for Defendant Ismail Salaam. Moreover, Defendant was in possession of the Samsung flip phone when he was arrested, and in fact sent text messages from it while sitting in the police station. The Huawei was recovered from the room at the La Quinta, in which J.B. and Defendant had stayed.

Additionally, many of the images and videos were visibly taken in the room at the La Quinta. J.B. testified that Defendant took the pictures and videos. Moreover, a voice in the background of the videos directs J.B. to pose and act in a sexually explicit manner, and that voice matched Defendant's when compared to his recorded interview with law enforcement. Further, J.B., her mother, and Special Agent Jon Jones, all testified that they recognized the voice as belonging to Defendant.

The Government also presented evidence that the sexually explicit images of J.B. were uploaded to Backpage.com, in order to advertise and engage J.B. in commercial sex services, as clearly evidenced by the accompanying advertisement text.[1] The advertisement instructed interested 'clients' to call the telephone number associated with the Samsung flip phone. And the Samsung also contains text messages sent to various individuals, seeking assistance with how to pay for the Backpage advertisement using Bitcoin. Ultimately, the advertisement was never paid for and therefore did not go live.

Regardless, the Government presented evidence that the Samsung flip phone contained a text message exchange with J.B.'s iPhone, instructing J.B. to have sex with someone in exchange for money and marijuana. J.B. testified that the text message exchange was between her and Defendant.

---

[1] The text of the advertisement stated:

> Hey guys I'm Babyface, I'm bored would u come play wit me??? I'm young, Horny, tight, wet, freaky, I love wat I do, and taste like water, cum rejuvenate with me lol make it a night remembered forever!! Only in town for one night… Hurry call 5133910609.

The final text messages on the Samsung flip phone were sent by Defendant, while he was at the Springdale Police Department. Defendant sent those text messages to a woman (the Government's witness, "D.M.") who was, at the time, a prostitute advertising on Backpage.com. In those texts, Defendant informed D.M. that he had a room at the La Quinta, but that the room was no longer of any use to him because he had procured the room for his "girl" who had just been arrested. The only girl arrested with Defendant that night was J.B.

With regard to interstate nexus, the Government presented evidence that the Huawei phone, the iPhone, and the Samsung flip phone, all of which were used to facilitate the trafficking offense, were made or assembled outside of Ohio. The Government also presented evidence that Defendant used the room at the La Quinta in furtherance of the offense, and that because the corporate headquarters of La Quinta were located in Texas, the profits earned from Defendant's use of the room flowed out of state. Finally, at the time of the offense, the servers for Backpage.com—*i.e.*, the website used to upload the advertisement—were also located outside of Ohio.

Accordingly, the Court finds that there is ample evidence from which a rational trier of fact could find that the Government met its burden as to each essential element of the offense. Accordingly, judgment of acquittal is denied as to Count 1.

**B. Counts 2 and 3 – Production of Child Pornography**

Counts 2 and 3 of the Superseding Indictment charged Defendant with production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e). (Doc. 32). Count 2

related to an image found on the iPhone,[2] and Count 3 related to videos found on the Huawei phone.[3]  To convict Defendant on Counts 2 and 3, the Government was required to prove that: (1) on or about September 14, 2016 (Count 2) and on or about August 28, 2016 (Count 3), Defendant employed, used, persuaded, induced, enticed, or coerced, a minor (J.B.) to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (2) the visual depiction was produced using materials that were mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including computer.  18 U.S.C. § 2251(a); Sixth Cir. Pattern Inst. 16.01.

Defendant argued that the Government failed to prove the visual depictions meet the definition of "sexually explicit conduct."[4]  Specifically, as to Count 2, Defendant

---

[2] The image for Count 2 was admitted as Government's Exhibits 4.2 (unredacted) and 11.7 (redated), and Government's Exhibit 11.6 was a video showing the image as part of a series of photos, all of which were taken on the iPhone on the same day as the image in Ex. 4.2. Additionally, for purposes of clarification, the Court notes that, during oral arguments, while the Government occasionally referred to the image in Exhibit 4.2 as a "video," the image actually appeared to be a "Live Photo."  Live Photos are an optional feature of pictures taken with an iPhone, which allows the user to capture not only the still image, but a 3-second audio and video recording of the moment (*i.e.*, 1.5 seconds before, and 1.5 seconds after the photo is taken). Take and Edit Live Photos, Apple, available at: https://support.apple.com/en-us/HT207310.

[3] The videos charged in Count 3 were admitted as the Government's Exhibits 7.2 to 7.4.

[4] As the jury was instructed, the term "sexually explicit conduct" means actual or simulated masturbation or lascivious exhibition of the genitals or pubic area of a person.  (Doc. 97 at 20); 18 U.S.C. § 2256(2)(A).  In deciding whether an exhibition is lascivious, the jury was instructed to consider the overall content of the visual depiction and the jury was further provided the following list of six non-exhaustive factors to consider: (a) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (b) whether the setting of the visual depiction is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity; (c) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (d) whether the child is fully or partially clothed, or nude; (e) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (f) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.  (Doc. 97 at 20-21); Sixth Cir. Pattern Inst. 16.01.

argued that the images neither depict masturbation, nor were they a lascivious exhibition of the genitals or pubic area. As to Count 3, Defendant argued that whether the videos are "sexually explicit" must be determined solely based on the visual depictions, without consideration for the audio (*i.e.*, it must be sexually explicit even if the videos were muted). And Defendant argued that, absent the audio, the videos merely depict J.B. showering. Additionally, Defendant argued that the Government presented contradictory evidence as to whether the videos charged in Count 3 were recorded using the Huawei phone or the iPhone, thereby failing to meet the interstate nexus element. The Court disagrees with each of Defendant's arguments.

As to Count 2, the image depicted J.B. from behind, fully nude, bent over, holding her ankles, and exposing her genitalia. Gov't Ex. 4.2. Thus, contrary to Defendant's assertions, the image in Government's Exhibit 4.2 clearly showed J.B. in an otherwise unnatural and sexually suggestive pose, containing a graphic depiction of J.B.'s genitalia, and the image was intended or designed to elicit a sexual response in the viewer.[5] The Court finds that any rational trier of fact could have found, beyond a reasonable doubt, that the image in Exhibit 4.2 met the definition of "sexually explicit conduct" by not just one, but all six of the non-exhaustive factors provided in the jury instructions.

---

[5] As the Government explained during oral arguments, the graphic detail of the image is not as clearly visible in Exhibits 11.6 and 11.7, because those exhibits were merely reproductions of the original image (Exhibit 4.2). Specifically, Exhibit 11.6 is a video of the agent scrolling through the photos on the iPhone and, in doing so, displaying the image, along with other images taken that same day; and Exhibit 11.7 is a redacted picture taken of the image, while the image was being displayed on the iPhone. Thus, while Exhibits 4.2, 11.6, and 11.7 all depict the same image, Exhibits 11.6 and 11.7 are merely reproductions of Exhibit 4.2 and therefore do not possess the same level of clarity as the original. Accordingly, the Government relied upon the original image in Exhibit 4.2 for purposes of proving the image's sexually explicit content.

As to Count 3, the videos in the Government's Exhibits 7.2 to 7.4 depict J.B. in the shower, fully nude, displaying her pubic area and genitalia, touching her body, and simulating masturbation. Additionally, the voice of the individual who was recording the video can be heard in the background, encouraging J.B. to engage in sexually explicit conduct. And, during their testimony, both J.B. and the agent identified the voice as belonging to Defendant. J.B. further testified that Defendant was in fact the person who recorded the videos.

As to Defendant's arguments, the Court is unpersuaded by the notion that the audio must be disregarded for purposes of determining whether the conduct depicted was "sexually explicit" by definition. In any event, the Government was required to prove that Defendant employed, used, <u>persuaded, induced, enticed, or coerced, a minor (J.B.) to engage in sexually explicit conduct</u> *for the purpose of producing a visual depiction*. 18 U.S.C. § 2251(a). Thus, the dialogue captured in the recording served to further evidence that Defendant persuaded, induced, enticed, and coerced J.B. to engage in the depicted conduct. Accordingly, it was proper for the jurors to hear the audio with the recording.

Moreover, as to whether the conduct was sexually explicit, the Court finds that, even absent the audio, there is sufficient evidence from which any rational juror could find, beyond a reasonable doubt, that the videos depict "sexually explicit conduct." First, the videos depicted J.B. <u>simulating</u> masturbation. And because either actual or simulated masturbation meet the definition of "sexually explicit conduct," J.B.'s testimony that she was not actually masturbating is irrelevant. *See* 18 U.S.C. § 2256(2)(A)(iii).

Additionally, any rational trier of fact could have concluded, beyond a reasonable doubt, that the videos met the definition of "sexually explicit conduct" in that they contained the "lascivious exhibition of the genitals or pubic area of a person," as determined by the videos as a whole and when considered in light of the six, non-exhaustive factors identified for the jurors. That is, the videos show J.B. naked, touching her body, engaging in a sexually suggestive manner, with a focus on her genitalia and pubic area, in a manner intended or designed to elicit a sexual response in the viewer.

Finally, as to the interstate nexus element for Count 3, the testimony and evidence show that the Huawei phone was manufactured outside of Ohio. *See* Gov. Ex. 12.31. And J.B. testified that Defendant recorded the videos using the Huawei phone. Additionally, the Government presented evidence showing that the videos were specifically found on the Huawei, that the videos' metadata could be accessed from the Huawei, and that the Huawei showed the videos to be dated August 28, 2016. Thus, while the agent testified that the metadata could not *conclusively* establish that the videos were recorded on the Huawei, there was ample testimony and evidence from which a rational juror could conclude, beyond a reasonable doubt, that the Huawei was in fact used to produce the videos, and that the Huawei was manufactured outside of Ohio.[6]

---

[6] Even assuming that the Huawei was not used to <u>record</u> the videos, such a conclusion would only indicate that the videos did not *originate* from the Huawei, but were instead *copied and saved onto* the Huawei. In that regard, the Sixth Circuit has held that copying images or videos onto another device meets the definition of "production" for purposes of 18 U.S.C. § 2251(a). *United States v. Lively*, 852 F.3d 549, 559 (6th Cir. 2017) ("We begin by addressing an issue of first impression for our circuit: under § 2251(a), does an individual 'produce' child pornography when he copies 'visual depictions' of child pornography onto a hard drive that has a nexus to interstate or foreign commerce? We join the majority of circuits to consider this question, and answer it 'yes.'").

In sum, the Court finds that there was sufficient evidence from which a rational trier of fact could find the Government met its burden as to each essential element of the offenses charged in Counts 2 and 3 of the Superseding Indictment. Accordingly, judgment of acquittal is denied as to Counts 2 and 3.

## IV. CONCLUSION

Based upon the foregoing, Defendant's Rule 29 motion is **DENIED**.

**IT IS SO ORDERED.**

Date: 6/2/2021

Timothy S. Black
United States District Judge